# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE        )
                         )
                         )
    v.                   )        I.D. No.:    1904007802
                         )
                         )
                         )
JAIER SHARPE,            )
                         )
        Defendant.       )

## MEMORANDUM OPINION

Submitted: December 2, 2019
Decided: January 10, 2020

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

John S. Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Alicea A. Brown, Esquire and Tristan J. Karsnitz, Esquire, Assistant Public Defenders, Office of Defense Services, Wilmington, Delaware. *Attorneys for Defendant.*

**MEDINILLA, J.**

# I. INTRODUCTION

The record before this Court reads like the *Strange Case of Dr Jekyll and Mr Hyde.*[1] Defendant, young Jaier (or Mr. Sharpe), stands before this Court at age seventeen, facing charges including Attempted Robbery First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Carrying a Concealed Deadly Weapon and Possession, Purchase, Own or Control of a Firearm (Handgun) by a Prohibited Juvenile.[2] Defendant seeks transfer of his charges to Family Court under 10 *Del. C.* § 1011. Upon consideration of the reverse amenability hearing held on December 2, 2019, the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

# II. FACTUAL AND PROCEDURAL HISTORY[3]

The underlying charges in this case relate to an attempted robbery that took place on March 31, 2019. On this day, a forty-five-year-old victim was in communication via an iPhone app with an individual who agreed to meet him in order to sell him a phone. The victim was directed to the area of 2424 Bowers Street and he went to the location accompanied by his seventeen-year-old son. The victim met with an individual described as a black male between the ages of seventeen and

---

[1] *See generally* Robert Louis Stevenson, *Strange Case of Dr Jekyll and Mr Hyde* (1886).
[2] *See* Indictment, True Bill Filed. No. 19, *State of Delaware v. Jaeir Sharpe*, Crim. I.D. No. 1904007802, D.I. 1 (Del. Super. Ct. June 10, 2019).
[3] The recitation of the facts is based on oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on December 2, 2019.

nineteen. The victim stated that upon arrival, another person appeared, brandished a firearm, and demanded money.

The victim is a legally permitted firearm owner. Although alarmed, through his experience, he saw the individual rack the firearm twice and concluded that the firearm was not loaded. He then fled the scene and contacted the police. He described the firearm as a semi-automatic weapon with 100% certainty that the gun was empty.

Through police investigation, recognizing that internet applications are sometimes used to solicit robberies, law enforcement analyzed the online account for this particular transaction. The website used created a GPS record yielding a distinct address. Through analyses of online accounts, the police determined that the suspect had an account from the area of Defendant's residence. A photographic array was shown to the victim who positively identified Defendant as the person who displayed the firearm and demanded the money. Defendant was arrested and charged, accordingly.

Defendant moved to transfer his case to Family Court on June 10, 2019. On September 17, 2019, Defendant requested a continuance of his hearing in order to review records and decide whether an expert would be required. The hearing was rescheduled to December 2, 2019.

The State called Matthew Reis of the Wilmington Police Department. The Defendant called Jennifer Wilson on behalf of the Division of Youth Rehabilitative Services ("YRS") of the Department of Services for Children, Youth & Their Families ("DSCYF"), and Dr. Laura Cooney-Koss, Psy.D. The parties then stipulated to the introduction of their respective reports. After considering the parties' submissions, arguments, and the evidence presented at the reverse amenability hearing, the matter is ripe for review.

## III. CONTENTION OF THE PARTIES

As stated, the underlying charges relate to an attempted robbery. However, the State portrays Defendant as a violent and dangerous individual. It asks the Court to consider that, although not charged, Mr. Sharpe has been a person of interest in violent and deadly gang-related feuds that have plagued the City of Wilmington.[4]

In wild *Jekyll/Hyde* contrast, representatives from YRS—as well as the only expert that testified in this case—present a different picture of Jaier. He has excelled while in custody. Commended for achieving highest "Goldshirt" status for behavior while detained, not only do they recommend his return to the Family Court, they stress that Jaier can be rehabilitated through higher Level IV or V treatment and

---

[4] The State argued that, although not charged, Defendant's GPS had "pinged" in the area of most recent shootings to suggest his affiliation with a local gang. Except for representations and argument made by the Deputy Attorney General, no evidence was introduce to substantiate these arguments. The Court does not weigh these representations in this analysis.

programming through YRS that he has yet to receive. Imploring the Court is also Jaier's strongest advocate—his Mother—a mother of six who holds down two jobs and clearly loves her son. Maternally, she further suggests that because she is an "activist with the kids," her willingness to allow people to flow in and out of her home has caused her son to find himself caught in the cross hairs of Wilmington Police investigations.

In this *Jekyll/Hyde* quandary, the defense argues that to place Defendant in an adult facility would undoubtedly lead to the demise of young promising Jaier, while the State counters that failure to keep him monitored in this Court serves only to strengthen the more violent and dangerous Mr. Sharpe as he transitions into adulthood.

## IV. STANDARD OF REVIEW

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[5] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[6]

---

[5] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[6] *See, e.g., State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Ct. Mar. 31, 2014).

Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;"[7] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;"[8] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[9] and any "other factors which, in the judgment of the Court are deemed relevant."[10]

## V.  DISCUSSION

### A. Fair Likelihood of Conviction

Before weighing the § 1011(b) factors, "the Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile. The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11]  Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[12]

---

[7] 10 *Del. C.* § 1011(b)(1).
[8] *Id.* at § 1011(b)(2).
[9] *Id.* at § 1011(b)(3).
[10] *Id.* at § 1011(b).
[11] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[12] *Id.*

Since Defendant is also charged for Possession of a Firearm During Commission of a Felony, 11 *Del. C.* § 1447A(f) as amended requires the Court to find proof positive or presumption great that the accused used, displayed or discharged a firearm during the commission of a felony. Specifically,

> Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court.[13]

This provision entitles a juvenile defendant to an evidentiary hearing and allows the firearm charges to be transferred back to Family Court if the Court does not find proof positive or presumption great that the juvenile used, displayed, or discharged a firearm during the commission of a felony.[14] The proof positive or presumption great standard is commonly understood as whether "after [a] full hearing 'there is good ground to doubt the truth of the accusation.'"[15] If so, then "the Court in its discretion [may] conclude[] from the evidence that the State does not have a fair likelihood of convicting the accused of the . . . offense."[16]

---

[13] 11 *Del. C.* § 1447A(f).
[14] *See id.*
[15] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted).
[16] *Id.* at 383. The Court noted that the proof 'positive or presumption great' language is imprecise.

7

Here, the victim, an experienced owner of firearms, identified the use of a weapon and that Defendant was his assailant. Police also conducted an investigation placing the iPhone app/record at Defendant's residence. Under 11 *Del. C.* § 1447A(f), the Court first finds proof positive or presumption great that Defendant displayed a firearm during the commission of the robbery to maintain jurisdiction of the firearm charge. Further, after reviewing the totality of the evidence presented, this Court finds there remains a fair likelihood that Defendant will be convicted of the charged offenses. The State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial. The Court now considers the factors for transfer.

## B. Weighing § 1011(b)'s Four Factors

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two-pronged.[17] The first prong of the first factor inquiries into the nature of the present offenses that, by definition and virtue of being before this Court, are violent and serious. The first prong of the first factor weighs against transfer.

Second, Defendant has a juvenile record that reflects escalating impulsive and violent behavior. This is not surprising. He lives in a violent and crime-ridden

---

[17] *See* 10 *Del. C.* § 1011(b)(1).

8

environment. Also not surprisingly, yet tragically, Defendant has suffered significant losses in his life, including the shooting death of three of his friends, the murder of two uncles, and the suicide of his younger brother's best friend.[18] Most devastating was that his fifteen-year-old girlfriend of two years was also shot and killed.

Defendant was only in seventh grade when he first entered YRS in November 2016. One month after he turned fourteen, he was adjudicated delinquent for Disregarding Police Signal, Conspiracy and Resisting Arrest, with an unsuccessful discharge from the Wraparound Program. After beginning eighth grade, he was arrested for Receiving Stolen Property Over $1500 for driving cars that did not belong to him. Two months later, in November 2017, he was adjudicated delinquent again for Disregarding Police Signal. While on community supervision in January 2018, the probation officer notes that Defendant was a person of interest for a shooting incident that occurred outside of his home. He was not charged.

In May 2018, Defendant was arrested for Criminal Trespass Second Degree and he was experiencing issues with non-compliance with curfew. One month later, on June 8, 2018, a youth was shot in the backyard of Defendant's residence. A decision was made to have Defendant monitored with GPS.

---

[18] Defendant's Exhibit 2, Report of Laura Cooney-Koss at 3 [hereinafter "Report of Cooney-Koss"]. Motion for Transfer: Reserved Decision, *State of Delaware v. Jaeir Sharpe,* Crim. I.D. No. 1904007802, D.I. 18 (Del. Super. Ct. Dec. 2, 2019).

On June 22, 2018, WPD issued a warrant for Defendant for Possession of Ammunition by a Person Prohibited. The charge stemmed from an administrative search conducted two weeks before and Defendant was charged with Possession, Purchase, Own or Control of a Firearm, Ammunition, by a Person Prohibited and two counts of Aggravated Menacing. He was detained at NCCDC on June 26, 2018. On August 2, 2018, the Family Court modified his bail to release with GPS and house arrest. He violated his house arrest within 24 hours of his release. He was given a verbal warning. He was compliant with his probation thereafter and his case was successfully closed on November 13, 2018.

On February 9, 2019, Defendant was charged with Terroristic Threatening by Delaware State Police for allegedly threatening a teacher at William Penn High School. He was also arrested for charges of Receiving Stolen Property Over $1500 and, again, Resisting Arrest. Two months later, he was detained on these current robbery and firearm charges that allegedly occurred on March 31, 2019. On May 1, 2019, the Family Court set his bail as unsecured with GPS and house arrest. Despite warnings for not following house arrest rules and not attending school, he remained non-compliant and was arrested for Noncompliance with Bond on June 5, 2019. A Breach of Release was filed on June 7. He was arrested on June 11, 2019 and has since remained detained at the NCCDC.

The nature of his prior record demonstrates that the rehabilitative efforts in Family Court have not deterred him. He turns eighteen-years-old in ten months. Mature transformation into adulthood would be best if he remains in this Court. Thus, as to both prongs of factor one, the Court finds that they weigh against transfer.

## 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's treatment history is limited. Although he was unsuccessfully discharged from the Wraparound program, he eventually started improving through later adjudications and community supervision. His attendance at school was sporadic at times and his behavior concerning. Although while detained, he has earned Gold shirt status—the highest behavioral phase under the CBT Behavioral Model at NCCDC. Dr. Cooney-Koss opines that placing Jaier in a similar adult setting "would be insufficient to assist him in making prosocial changes and diminish the positive attributes that he currently has."[19] Accepting that this opinion was not challenged, this factor weighs in favor of transfer since Defendant has never been on the highest form of probation and never received Level IV or V programming at YRS.

## 3. Section 1011(b) Factor Three: Interests of Society and Defendant

---

[19] Report of Cooney-Koss at 16.

11

Defendant faces several felony offenses with violent escalating behavior. Either while on community supervision or within two months of completing his probation, Defendant continued to re-offend. Whether it is merely impulsive behavior attributable to juvenile behavior or something more, with such volatility in Defendant's life, continuing in Family Court is not encouraging.

Defendant has a sister in college. His mother is a certified nursing assistant who holds two jobs to provide for her family. His father works at an airport. Defendant has good role models in his family. It is this Court's hope that the State is wrong about its portrayal of Defendant and that young Jaier will have his opportunity to return to his family and also be a role model for his younger siblings.

It is therefore in Defendant's best interest to stay in this Court. He has not accepted the Family Court's attempts at rehabilitation. And yet Jaier expresses a willingness to succeed, attend school, and be a positive influence for his siblings. It may be that his mother is correct and he finds himself in wrong places at wrong times surrounded by people, places and things that will continue to paint him in a sinister light. If so, while in this Court, Jaier may succeed and prove the WPD wrong. He can demonstrate he no longer reacts with the impulsivity of a child, face the consequences of his adult behavior, and continue to be a productive member of society like his family.

If the State is correct in its portrayal of the darker side of Mr. Sharpe, and this Court hopes it is not, then it is in the best interest of society to keep him in this Court, where he can transition more smoothly into adulthood while monitored. This Court finds that it is in Defendant and society's interests to remain in this Court. This factor weighs against a transfer.[20]

## CONCLUSION

The Court finds that the State has established proof positive or presumption great that Defendant used or displayed a firearm during the commission of the felony for which he stands charged under 11 *Del. C.* § 1447A(f). The State has also established a fair likelihood of conviction. Weighing the enumerated factors under 10 *Del. C.* § 1011(b), transfer is not appropriate. Therefore, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc:    Prothonotary
cc:    Defendant
       Jennifer Wilson, Master Family Service Specialist

---

[20] The fourth factor of § 1011(b)—other relevant factors the Court deems relevant—has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in its opinion. 10 *Del. C.* § 1011(b).

13